**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHELLE BRADY,** | **CASE NO. 1:19-CV-01303** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **APM MANAGEMENT, LLC, et al.,** | |
| Defendants. | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon Plaintiff Michelle Brady's ("Brady") Position Statement in Support of Her Petition for Fees and Costs ("Fee Petition") filed on July 10, 2020 pursuant to the Court's June 26, 2020 Order. (Doc. No. 45.) Defendants APM Management, LLC ("APM") and Pepper Pike Capital Partners, LLC ("Pepper Pike') (collectively, "Defendants") filed a brief in opposition to Brady's Fee Petition on July 17, 2020. (Doc. No. 47.) Also, pending before this Court are several issues the Court did not decide in its June 26, 2020 Order, but instead took under advisement following the hearing held that day. (*See* Doc. No. 43.)

For the following reasons, Brady's Fee Petition (Doc. No. 45) is GRANTED IN PART and DENIED IN PART.

**I. Background**

This case arises from APM's termination of Brady from her position as a regional property manager shortly before she was scheduled to return to work from a medical leave. (Doc. No. 44 at ¶¶ 16-23.) Pepper Pike is the successor to APM. (*Id.* at ¶ 9.) Brady alleges that her termination violated the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and Ohio law prohibiting disability discrimination. (*Id.* at ¶¶ 32-83.)

On June 26, 2020, the Court held a hearing on several pending motions. (Doc. No. 43.) Specifically, the hearing was held to address Brady's Motion for Sanctions and Fees (Doc. No. 26), Brady's Motion for Sanctions Under Federal Rule of Civil Procedure 11 (Doc. No. 34), Brady's Motion for Sanctions for Spoliation, or in the Alternative for Leave to Amend the Complaint (Doc. No. 39), and Defendants' Motion for Reconsideration (Doc. No. 41). (Doc. No. 43.) During the hearing, the Court ruled on most of the issues presented by the pending motions. As part of its rulings, the Court barred Defendants' defense regarding the outsourcing of Plaintiff's job. (*Id.*) The Court also held that sanctions against Defendants and their counsel, Jonathan Hyman, were warranted pursuant to 28 U.S.C. § 1927, Rule 11, and Rule 26(g) for the excess costs and reasonable expenses, including attorneys' fees, that Brady was forced to incur as a result of their conduct. (*Id.*) The Court ordered Brady to submit evidence of those fees and costs by July 10, 2020 and gave Defendants until July 17, 2020 to respond to Brady's submission. (*Id.*) Both parties timely filed briefs in compliance with the Court's Order. (Doc. Nos. 45, 47.) Brady has requested that the Court award her $29,581.95 in fees and costs to sanction Defendants' and their counsel's conduct, while Defendants assert this amount should be reduced by a total of $16,695. (Doc. No. 45 at 1; Doc. No. 47 at 4.)

During the June 26, 2020 hearing, the Court also took several issues under advisement. In particular, the Court withheld ruling on (1) Brady's request that the Court impose sanctions against Defendants and their counsel under the Court's inherent authority; (2) Brady's request that the Court bar Defendants' new theory or defense, i.e., that due to a restructuring of the organization, Defendants outsourced other jobs, and Brady's job duties were moved in-house; and (3) Brady's request for sanctions pursuant to Rule 37 for Defendants' failure to comply with discovery. (Doc. No. 43.) The Court addresses each of these issues below as well.

2

**II.     Analysis**

    **a.   Whether Sanctions Under the Court's Inherent Authority Are Appropriate**

As noted above, for the reasons stated on the record at the June 26, 2020 hearing, the Court previously found that sanctions were appropriate under 28 U.S.C. § 1927, Rule 11, and Rule 26(g). (Doc. No. 43.)  In her Motion for Sanctions and Fees and at the hearing, Brady argued that the Court should also award sanctions under its inherent authority based on Defendants' and their counsel's pattern of misrepresentations and consistent failure to comply with discovery obligations.  (*See* Doc. No. 26 at 15-17.)  Defendants and their counsel assert that sanctions under the Court's inherent authority are not appropriate because they did not act in bad faith.  (*See* Doc. No. 32.)  The Court finds that the Court's inherent authority provides another basis for its imposition of sanctions as to Defendants, but not as to Defendants' counsel.

"[F]ederal courts have the inherent power to impose sanctions to prevent the abuse of the judicial process." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502 (N.D. Ohio 2013); *accord Ndoye v. Major Performance LLC*, No. 1:15-cv-380, 2017 WL 822110, at *10 (S.D. Ohio Mar. 1, 2017) ("A district court may impose sanctions pursuant to its inherent authority 'to control the litigants before it and to guarantee the integrity of the court and its proceedings.'") (quoting *Holmes v. U.S. Bank*, No. 1:07-cv-695, 2009 WL 1542786, at *6 (S.D. Ohio May 28, 2009)).  Courts may exercise this inherent power to sanction "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' or when the conduct was 'tantamount to bad faith.'" *Laukus*, 292 F.R.D. at 502-03 (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)).

Here, Defendants have consistently failed to produce documents or comply with even the most basic discovery obligations without Court intervention, unnecessarily delaying this case and

taking up the Court's time. (*See* Doc. No. 18 (ordering Defendants to respond to Brady's discovery requests and rescheduling mediation as a result of Defendants' late responses); Doc. No. 25 (ordering Defendants to produce documents demonstrating that Brady's job duties were outsourced or be precluded from introducing such evidence in the future); Doc. No. 37 (ordering Defendants to produce a signed verification for their interrogatory responses, to fully respond to certain interrogatories they failed to properly answer, and to produce documents related to job applications and postings).)

More importantly, however, throughout these proceedings, Defendants repeatedly falsely represented that Brady was terminated because her position was outsourced. For instance, on January 24, 2020, in their responses to two of Brady's interrogatories, Defendants stated that no one assumed Brady's job duties after she was terminated because "[t]he position was outsourced" and that "Defendants terminated Plaintiff's employment pursuant to the elimination of her position following its divesting of properties and the outsourcing of its property management responsibilities." (Doc. No. 26-3 at 5, 8.) Notably, Defendants stated that their interrogatory responses were prepared by Defendants' counsel "with input and information from Paul Kielber, President and CEO of Pepper Pike Capital Partners." (*Id.* at 2.) Yet, when Defendants were ordered to produce a verification for their responses after initially failing to do so for four months (Doc. No. 37), Defendants provided a verification from Paul Pogozelski ("Pogozelski"), Pepper Pike's director of accounting. It appears that Pogozelski did not have any involvement in Brady's termination, and Defendants did not identify him in their initial disclosures or in response to Brady's interrogatories requesting the names of individuals with relevant knowledge. (*See* Doc. No. 26-3 at 3, 5; Doc. No. 33-1.) Defendants have not offered any explanation as to why Kielber did not verify Defendants' responses despite providing

4

the information on which Defendants' responses were based. This discrepancy is suspicious and will make it more difficult for Brady to present evidence of pretext without a sworn statement from Kielber.

In addition to claiming that Brady's job was outsourced in their interrogatory responses, Defendants also indicated that the management of one of Brady's properties was outsourced to a third party in their mediation statement, and continued to represent that Brady's position had been outsourced at the actual mediation on February 25, 2020. Further, in a status conference on March 19, 2020, counsel for Defendants maintained that he had received documentation from Defendants showing that all of Brady's job duties were outsourced to others. (Doc. No. 25.)

It was not until Brady moved for sanctions based on Defendants' failure to produce such documents that Defendants finally admitted that none of the management responsibilities for any of the properties that Brady managed were outsourced. (Doc. No. 32 at 3.) Instead, in a complete reversal of their original position, Defendants now claim that the four properties Brady managed at the time of her termination were "brought in-house for property management," but that certain other properties not managed by Brady were outsourced. (*Id.*) In addition, in support of this new theory, Defendants submitted an affidavit from a witness they had failed to identify in their initial disclosures or in their responses to interrogatories requesting the identification of relevant individuals. (*See* Doc. No. 26-3 at 3, 5; Doc. No. 33-1.) Thus, Defendants repeatedly misrepresented the reason for Brady's termination—an issue at the heart of Brady's claims—only to change their position and theory of defense six months into discovery based on information provided from a never-before-identified witness when they were faced with the prospect of sanctions. The Court finds Defendants' conduct to have been in bad faith, or at the very least, is conduct tantamount to bad faith.

5

While some of Defendants' misrepresentations in this case were made through Defendants' counsel, such as the representations made at the March 19, 2020 status conference, there is no evidence that Defendants' counsel was aware of the falsity of his statements or doing anything other than working from the information provided to him by his clients. While Defendants' counsel is certainly not free from culpability—as he could, and should, have verified that his clients' defense had evidentiary support—the Court cannot conclude that he has acted in bad faith.

Consequently, the Court holds its inherent authority provides another basis to sanction Defendants for their conduct, but that sanctions pursuant to its inherent authority are not appropriate as to Defendants' counsel.

### b. Whether Defendants' New Defense Theory Is Barred

On June 26, 2020, the Court held that Defendants' defense regarding the outsourcing of Brady's job is barred, as the Court had warned Defendants would occur if they failed to timely produce the documents they claimed to possess demonstrating that Brady's job was in fact outsourced. (Doc. Nos. 25, 43.) Brady has requested that in addition to the preclusion of this defense, the Court also bar Defendants from presenting their new defense that due to a restructuring, other jobs were outsourced, and Brady's responsibilities were moved in-house. (Doc. No. 33 at 10.) The Court declines to issue this additional sanction, as it would largely preclude a determination of this case on the merits. *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) (noting the "strong preference for trials on the merits in federal courts"). The barring of Defendants' outsourcing defense and the substantial fee award being imposed are sufficient consequences for Defendants' actions at this time. Moreover, Brady has already filed a Motion for Default Judgment based on Defendants' conduct subsequent to the June 26, 2020 hearing, and the

6

Court may more appropriately assess whether default is warranted once that motion has been fully briefed. (*See* Doc. No. 46.)

### c. Whether Sanctions Under Rule 37 Are Appropriate

On June 5, 2020, the Court granted Brady's Motion to Compel (Doc. No. 36) related to the production of Defendants' financial information. During the June 26, 2020 hearing, the Court denied Defendants' Motion for Reconsideration of that ruling. (Doc. No. 43.) However, at that time, the Court declined to rule on Brady's request for an award of attorneys' fees for time Brady's counsel spent on the Motion to Compel pursuant to Rule 37. (*Id.*) Brady argues that an award of her expenses is nearly mandatory under Rule 37 when a court grants a motion to compel, and Defendants have not shown that they satisfy any of the exceptions. (Doc. No. 36 at 5; Doc. No. 45 at 2-3.) In opposition, Defendants contend that they had a good faith basis to oppose the production of the requested financial records based on supporting case law. (Doc. No. 47 at 3.) The Court concludes that Defendants' refusal to produce the requested documents was substantially justified, and, therefore, the Court will not award fees or costs related to Brady's Motion to Compel.

"Rule 37 requires the payment of expenses associated with the grant of a motion to compel unless the 'opposing party's nondisclosure, response, or objection was substantially justified; or . . . other circumstances make an award of expenses unjust.'" *Weimer v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-844, 2008 WL 1775522, at *3 (S.D. Ohio Apr. 17, 2008) (quoting Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii)). "'Substantially justified' means 'justified to a degree that could satisfy a reasonable person.'" *Eagle v. Hurley Med. Ctr.*, 292 F.R.D. 466, 481 (E.D. Mich. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In other words, a party's position is substantially justified "if it raises an issue about which 'there is a genuine dispute, or if reasonable people could

7

differ as to the appropriateness of the contested action.'" *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce*, 487 U.S. at 565); *see also Weimer*, 2008 WL 1775522, at *3 (declining to award attorneys' fees when the plaintiff's objection was based on "a legal theory that [was] supported by some-albeit ultimately unpersuasive-authority").

In this case, Brady sought the production of certain documents relating to Defendants' financial information as relevant to the issue of punitive damages, which are available under her disability discrimination claims under both the ADA and Ohio law. (Doc. No. 36.) Defendants objected to this production, asserting that Brady's claims for punitive damages are subject to a statutory cap, and, where that is the case, financial information is not relevant. (Doc. No. 41.) Defendants cited two cases in support of their position. *See Nyanjom v. Hawker Beechcraft, Inc.*, No. 12–1461–JAR–KGG, 2014 WL 667885, at *3 (D. Kan. Feb. 20, 2014) ("The Court agrees with Defendant that discovery of its net worth is not relevant at this stage of the litigation given the statutory cap on punitive damages contained in the ADA."); *E.E.O.C. v. Dillon Companies, Inc.*, No. 09–cv–02237–ZLW–MEH, 2010 WL 3239262, at *5 (D. Colo. Aug. 13, 2010) ("[T]he Court does not see how Defendant's net worth is relevant to any of Plaintiff's claims, including its request for punitive damages, particularly in light of the statutory cap limiting the sum of compensatory and punitive damages."). While these cases are out-of-circuit authority and other courts have disagreed with their reasoning, there is no evidence that they have been overturned. Moreover, Brady has not identified any Ohio or Sixth Circuit authority that specifically addressed this statutory cap argument. Because Defendants' position was supported by some case law, the Court finds they were substantially justified in their objection to the production of their financial information, even though the Court ultimately found their argument lacked merit.

Accordingly, the Court will not award fees and costs related to Brady's Motion to Compel and request for Defendants' financial records, and Brady's Fee Petition is denied to the extent it requests such an award. Defendants assert that $3,900 should be deducted for time related to the parties' dispute over the production of financial records, but they do not provide an explanation as to how they arrived at that figure. (Doc. No. 47 at 4.) Upon a careful review of the timesheets submitted by Brady in conjunction with her Fee Petition, the Court finds that only $3,450 of the claimed fees and costs were related to the dispute over Defendants' financial records, and will thus reduce the award by that amount.

### d. Calculation of Sanctions

Finally, Defendants make two additional arguments in support of a reduction of the award requested by Brady in her Fee Petition. First, Defendants assert that the award should not include attorneys' fees or costs related to the parties' mediation or Brady's subpoena to Beztak Properties[1] because those costs arose before Brady's first motion for sanctions. (Doc. No. 47 at 2-3.)[2] Second, Defendants argue that time spent by Brady's attorney Cathleen Bolek ("Bolek") should not be included in the fee award because it is duplicative of the time spent by Brady's attorney Matthew Besser ("Besser"). (*Id.* at 3-4.) The Court finds that fees and costs related to the mediation are properly included in the fee award, but that some deductions are necessary to account for the duplication of work by Brady's counsel.

---

[1] Beztak Properties is the company to which Defendants originally claimed they had outsourced Brady's property management responsibilities. (*See* Doc. No. 25.)

[2] Defendants also assert these costs should not be awarded because Defendants' and their counsel's conduct does not rise to the level of bad faith. (Doc. No. 47 at 2-3.) This argument is misplaced. That standard only applies to a court's authority to issue sanctions under its inherent authority, which the Court addressed above, and does not apply to the other bases under which the Court found sanctions were appropriate.

9

Initially, the Court notes that pursuant to the June 26, 2020 hearing and today's opinion, the Court has found that sanctions are warranted against Defendants under the Court's inherent authority, Rule 11, and Rule 26(g), and that sanctions are warranted against Defendants' counsel under 28 U.S.C. § 1927, Rule 11, and Rule 26(g). These bases for sanctions provide the Court with substantial discretion to craft an appropriate sanction in this case. *See Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 306 (6th Cir. 2016) (holding "courts have broad discretion under their inherent powers to fashion punitive sanctions" with "no requirement of a perfect causal connection between the sanctioned conduct and the attorney's fees awarded"); *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 421 (6th Cir. 1992) ("District courts are permitted wide discretion under Rule 11 to make 'appropriate sanctions.'") (Martin, Jr., J., concurring); *Lankford v. Reladyne, LLC*, No. 1:14-cv-682, 2015 WL 7888390, at *4 (S.D. Ohio Dec. 4, 2015) (noting that under Rule 26(g), courts have "discretion to determine what degree of sanction is appropriate in light of the circumstances of the case"); *In re Royal Manor Mgmt., Inc.*, Nos. 08–50421, 08–50657, 08–50722, 2013 WL 6229151, at *5 (Bankr. N.D. Ohio Dec. 2, 2013) ("[T]he Court is required to make an effort to isolate those costs and fees incurred by reason of the conduct that violated § 1927. Precision, however, is not required.").

In this case, part of the conduct forming the basis for sanctions occurred prior to, and at, the mediation, largely rendering it futile from the start. In addition, had Defendants and their counsel not misrepresented the fact that Brady's job duties were outsourced to Beztak Properties, Brady would have had no need to issue a subpoena to it to try to confirm Defendants' statements for which Defendants had not provided any evidence. As a result, the Court finds that the fees and costs related to the parties' mediation and Brady's subpoena to Beztak Properties are sufficiently related to

Defendant's and their counsel's misconduct, and it is appropriate to include those costs in the award against both Defendants and their counsel.

Next, although the Court does not agree with Defendants that all of Bolek's time should be discounted, the Court concludes that some deductions are necessary. This is a relatively simple case involving a single plaintiff and claims under the FMLA, the ADA, and Ohio's disability discrimination statute. Based on Besser's and Bolek's timesheets, it appears that Besser has been handling the majority of the work in this case. (*See* Doc. Nos. 45-1, 45-2.) Moreover, Besser has extensive experience in the field of employment discrimination, including trying employment discrimination cases to verdict as lead counsel. (Doc. No. 45-1 at ¶¶ 5-9.) As such, there was no need for both Besser and Bolek to attend (1) the February 25, 2020 mediation; (2) the telephonic conferences held on March 19, 2020 and May 8, 2020; and (3) the June 26, 2020 hearing. Thus, the Court will reduce the award by $3,330 for the time spent by Bolek preparing for and attending each of these proceedings as unnecessarily duplicative.

In accordance with the findings above, the Court will reduce the $29,581.95 award requested in Brady's Fee Petition by $3,450 for fees and costs related to Brady's Motion to Compel Defendants' financial records and by $3,330 for fees and costs for duplicative or unnecessary time. Additionally, Rule 11(c)(1) provides that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). Defendants have not argued that any exceptional circumstances exist, and the Court is not aware of any. Accordingly, sanctions will be jointly imposed on Defendants' counsel's law firm as well. *See Satchel v. Dayton Twp.*, No. 16-11518, 2016 WL 6158965, at *6 (E.D. Mich. Oct. 24, 2016). Therefore, the Court will impose sanctions on Defendants, Defendants' counsel, and Defendants'

11

counsel's law firm, Meyers, Roman, Friedberg & Lewis, jointly and severally, in the amount of $22,801.95.

### III. Conclusion

For the reasons set forth above, Brady's Fee Petition (Doc. No. 45) is GRANTED IN PART and DENIED IN PART. Brady is awarded sanctions against Defendants, their counsel Jonathan Hyman, and the law firm of Meyers, Roman, Friedberg & Lewis, jointly and severally, in the amount of $22,801.95. The award shall be paid in full within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

Date: July 28, 2020

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE