**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHELLE BRADY,** | **CASE NO. 1:19-CV-01303** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **APM MANAGEMENT, LLC, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

This matter comes before the Court upon the Motion for Default Judgment of Plaintiff Michelle Brady ("Brady"). (Doc. No. 46.) Defendants APM Management, LLC ("APM") and Pepper Pike Capital Partners, LLC ("Pepper Pike") (collectively, "Defendants") filed a brief in opposition on July 29, 2020, to which Brady replied on July 31, 2020. (Doc. Nos. 51, 52.) Brady also filed a supplemental brief in support of her Motion for Default Judgment on October 13, 2020. (Doc. No. 53.) For the following reasons, Brady's Motion for Default Judgment (Doc. No. 46) is DENIED.

**I. Background**

    **a. Prior Hearing and Sanctions**

This case arises from APM's termination of Brady from her position as a regional property manager shortly before she was scheduled to return to work from a medical leave. (Doc. No. 44 at ¶¶ 16-23.) Pepper Pike is the successor to APM. (*Id.* at ¶ 9.) Brady alleges that her termination violated the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and Ohio law prohibiting disability discrimination. (*Id.* at ¶¶ 32-83.)

On June 26, 2020, the Court held a hearing on several motions filed by Brady in which she sought sanctions for Defendants' conduct during discovery and certain misrepresentations, including false statements related to the reason for Brady's termination. (*See* Doc. No. 43.) During the hearing, the Court concluded that sanctions should be assessed against Defendants and their counsel based on their consistent failure to comply with discovery obligations without Court intervention and repeated false representations that Brady was terminated because her position was outsourced. As a result, the Court (1) assessed sanctions against Defendants and their counsel for the excess costs and reasonable expenses, including attorneys' fees, that Brady was forced to incur as a result of their conduct; and (2) barred Defendants' defense regarding the outsourcing of Brady's job. (*Id.*) The Court also granted Brady leave to file an amended complaint to include a cause of action for spoliation under Ohio law based on Brady's allegations that Defendants failed to properly preserve evidence of job postings and applications for management level positions from the time period in which Brady was terminated. (*Id.*) After briefing on the fees and costs incurred by Brady as a result of Defendants' misconduct, as well as several other issues the Court took under advisement during the hearing, the Court imposed sanctions on Defendants and their counsel in the amount of $22,801.95. (Doc. No. 50 at 12.)

During the sanctions hearing, the Court also struck the affidavit of Pepper Pike's Director of Revenue, Stephanie Sturzinger ("Sturzinger")—which Defendants had submitted in support of their opposition to Brady's motion for sanctions—because Defendants did not disclose Sturzinger as a potential witness in their initial disclosures or responses to interrogatories. (Doc. No. 43.) In that affidavit, Sturzinger explained that Defendants terminated Brady's employment as a regional property manager because of a reorganization in which Defendants outsourced the property

management functions for some of their properties and brought the management of the remaining properties in-house to their corporate offices. (Doc. No. 32-1 at ¶¶ 5-14.) As part of that explanation, Sturzinger declared: "The properties that the company decided to manage in-house are: Barrington (*which the company had only acquired* on June 9, 2017), Country Club (*which the company sold* on July 11, 2017), Hawthorne Hills, Spring Hollow, Woodlands, Georgetown, and Camelot." (*Id.* at ¶ 10 (emphasis added).)

Finally, during the June 26, 2020 hearing, the Court also issued several discovery related orders. First, the Court ordered Defendants to fully respond to Brady's Requests for Production of Documents ("RFPs") 3, 4, and 7 by July 10, 2020. (Doc. No. 43.) These requests generally required the production of documents related to the reason for Brady's termination, which would necessarily include documents related to Defendants' alleged restructuring. (Doc. No. 26-3 at 5-6, 9.) Second, the Court denied Defendants' Motion for Reconsideration, which sought reconsideration of the Court's previous order granting Brady's Motion to Compel the production of certain financial information in response to Brady's RFPs 9 through 13. (*See* Doc. Nos. 36, 41, 43.) These requests sought the production of information related to Defendants' financial condition as relevant to Brady's claim for punitive damages. (*See* Doc. No. 26-3 at 9-11; Doc. No. 36.) RFP 12 specifically sought documentation reflecting any real estate held by Defendants, but Defendants indicated in their Motion for Reconsideration that they do not hold any real estate. (*See* Doc. No. 26-3 at 10; Doc. No. 41 at 2 n.1.) Defendants' counsel reiterated this position at the hearing as well.

### b. Motion for Default Judgment

On July 15, 2020, Brady filed a Motion for Default Judgment, asserting that Defendants had made new false representations and further failed to comply with their discovery obligations after the

sanctions hearing warranting the entry of default judgment against them. (Doc. No. 46.) Specifically, Brady claimed that Defendants (1) failed to comply with the Court's order to produce documents in response to RFPs 3, 4, and 7 regarding the reason for Brady's termination by July 10, 2020; (2) failed to comply with the Court's order to produce documents in response to RFPs 9 through 13 regarding Defendants' financial information; and (3) made additional misrepresentations to the Court and Brady by falsely claiming that Defendants do not hold any real estate in direct contravention to the statements in Sturzinger's sworn affidavit that indicated Defendants "acquired" and "sold" certain properties. (*Id.* at 2-4.) Brady asserts that because Defendants have continued to engage in the same pattern of misconduct despite the Court's previous sanctions, default judgment is now warranted. (*Id.* at 5-8.)

On July 29, 2020, Defendants filed a brief in opposition to Brady's Motion for Default Judgment, asserting that default judgment is not appropriate for several reasons. (Doc. No. 51.) First, Defendants state that they did not fail to comply with the Court's order regarding RFPs 3, 4, and 7. Rather, Defendants claim they simply did not find any additional documents relating to Brady's termination or the reason for that decision, and thus had nothing to produce. (*Id.* at 2.) Second, Defendants contend that the parties engaged in additional discussions regarding the relevancy of financial information related to non-party entities, but that all requested financial information has now been produced. (*Id.*) Finally, Defendants admit that the statement in Sturzinger's affidavit indicating that Defendants bought and sold certain properties was inaccurate. (*Id.* at 3-4.) Supported by a new declaration from Sturzinger, Defendants state that the referenced properties were not bought and sold by Defendants or their related entities, but rather by unrelated third parties with whom Defendants contracted to manage the properties. (*Id.* at 3; Doc. No. 51-3 at ¶ 4.) Defendants assert

4

it was not their intent to mislead the Court and that the language used was imprecise, but merely meant to convey that certain properties came into or left Defendants' management around the time of Brady's termination. (Doc. No. 51 at 3-4.) Because their actions do not rise to the type of egregious conduct warranting default judgment and because the Court has not previously warned them of that possibility, Defendants argue that the entry of default judgment is not warranted. (*Id.* at 4-6.)

Brady filed a reply in support of her Motion on July 31, 2020. (Doc. No. 52.) In her reply, with regard to Defendants' claim that they did not find any additional documents responsive to RFPs 3, 4, and 7, Brady points out that Defendants' defense for Brady's termination is based on an alleged companywide reorganization, but Defendants now claim that there is not a single email or other electronic document discussing it. (Doc. No. 52 at 6.) Brady also states that at no point before the Court ordered deadline for production did Defendants represent to Brady that their search uncovered no responsive documents. (*Id.*) With respect to the production of financial information, Brady asserts that while Defendants claim to have produced the relevant information, they did not do so in a timely manner. (*Id.* at 1, 5-6.) Instead, Defendants did not produce the required documentation until four minutes before filing their opposition to Brady's Motion for Default Judgment. (*Id.*) Finally, Brady argues that given the history of this case, the Court should not accept Defendants' explanation and claim of innocence with respect to the misstatement regarding their ownership of real estate. (*Id.* at 3-4.)

Subsequently, on October 13, 2020, Brady submitted a supplemental brief in support of her Motion for Default Judgment. (Doc. No. 53.) Therein, Brady contends that she discovered new evidence showing that Defendants and their counsel made materially and objectively false and

5

misleading statements to Brady and the Court regarding Defendants' ownership of real estate and their affiliation with an entity owned by Defendants' CEO Paul Kiebler—Pepper Pike Acquisition Associates, LLC. (*Id.* at 1.) With respect to the ownership of real estate, Brady asserts that (1) according to a 2019 lien filed with the Oakland County, Michigan Recorder, Pepper Pike owns a property known as The Retreat at Farmington Hills in Farmington Hills, Michigan (Doc. No. 53-1 at 1); (2) a 2020 investment prospectus identifies Pepper Pike, through several intermediaries, as the part owner of an apartment building (Doc. No. 53-4 at 2-3, 16); (3) a news article regarding a lawsuit against Pepper Pike refers to Pepper Pike as the owner of an apartment complex and quotes Pepper Pike's president discussing the purchase of the complex (Doc. No. 53-7 at 2-3); and (4) 2018 and 2019 liens from the Wayne County, Michigan Register of Deeds website show at least two properties are or were variously owned by APM, Pepper Pike Construction LLC (an admitted subsidiary), and Pepper Pike Acquisition Associates LLC (Doc. No. 53-2).[1] Brady asserts that Defendants' counsel also has repeatedly denied any affiliation between Defendants and Pepper Pike Acquisition Associates LLC, but that the 2020 investment prospectus referenced above and certain SEC filings indicate it is indeed an affiliate of Defendants. (Doc. No. 53-4 at 2-3; Doc. No. 53-5 at 2.) According to Brady, evidence of these additional misrepresentations confirm that the only appropriate sanction left is default judgment. (Doc. No. 53 at 6-7.)

Defendants have not filed a response to Brady's supplemental brief despite having had two weeks in which to do so.

---

[1] Brady also points to several SEC filings as evidence of potentially even more pieces of undisclosed real estate (Doc. No. 53 at 5), but it is unclear how the documents submitted establish Defendants' ownership of additional real estate.

6

**II.     Analysis**

Pursuant to Fed. R. Civ. P. 37, "[a] district court may sanction parties with entry of default judgment for failure to comply with discovery orders." *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 933 (6th Cir. 2020); Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following: . . . (vi) rendering a default judgment against the disobedient party.").  Courts also "have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice." *Smith v. Comm'r*, 926 F.2d 1470, 1475 (6th Cir. 1991).

"However, entry of a default judgment against a party 'for failure to cooperate in discovery is a sanction of last resort,' and may not be imposed unless noncompliance was due to 'willfulness, bad faith, or fault.'" *Flagg v. City of Detroit*, No. 05–74253, 2011 WL 4634249, at *10 (E.D. Mich. Aug. 3, 2011) (quoting *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)).  When analyzing whether the entry of default judgment is an appropriate sanction, courts consider four factors:

> 1) whether the disobedient party acted in willful bad faith;
>
> 2) whether the opposing party suffered prejudice;
>
> 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and
>
> 4) whether less drastic sanctions were imposed or considered.

*KCI*, 801 F. App'x at 934.

While some of these factors favor the entry of default judgment, the Court concludes that such an extreme sanction is not appropriate at this time.

First, the Court agrees with Brady that Defendants have acted in willful bad faith, such that the first factor supports an entry of default judgment. "If a party refuses to comply with discovery repeatedly, such conduct is indicative of 'willfulness, bad faith, or fault.'" *DiLuzio v. Vill. of Yorkville, Ohio*, No. 2:11-cv-1102, 2016 WL 7406535, at *26 (S.D. Ohio Dec. 22, 2016) (quoting *Bank One*, 916 F.2d at 1079). "[T]he burden of showing that a failure to comply with court orders and discovery requests was due to inability, not willfulness or bad faith, rests with the individual against whom sanctions are sought." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 509 (N.D. Ohio 2013).

Here, Defendants failed to timely produce documents related to their financial information despite the Court's denial of their Motion for Reconsideration and Brady agreeing to an extension of time for the production. Defendants assert the delay was caused by additional disputes over the production of records related to non-party entities, but have offered no explanation as to why they were unable to produce those records in a timely manner once they agreed to do so. (*See* Doc. No. 51 at 2.) Instead, Defendants did not produce the requested documents until four minutes before filing their opposition to Brady's Motion for Default Judgment. (*See* Doc. No. 52-1.) As a further indication of bad faith, when Defendants' counsel asked Brady for a second extension, he cited the fact that Tax Day was coming up. (Doc. No. 52-2.) But when Defendants produced the documents, their counsel stated that "2019 returns have not been completed yet." (Doc. No. 52-3.)

Moreover, Defendants still appear to have not fully complied with the Court's order to produce the requested financial information. Defendants have not produced any documents related

8

to their ownership of real estate, as they and their counsel claim that Defendants and their affiliated entities do not own any real estate. (*See, e.g.*, Doc. No. 41 at 2 n.1; Doc. No. 46-3 at 1.) By doing so, it appears that Defendants and their counsel have made additional misrepresentations to the Court and Brady, as Brady has submitted substantial evidence showing that Defendants and their related entities own several pieces of real estate. (*See* Doc. Nos. 53-1, 53-2, 53-4, 53-7.) Further, Defendants and their counsel have refused to provide financial information related to Pepper Pike Acquisition Associates LLC because they claim it is a separate entity that has no current relationship with Defendants. (Doc. Nos. 52-3, 53-3.) Defendants' statements in this regard also appear to be false, as their statements directly contradict the evidence submitted by Brady in her supplemental brief showing that Pepper Pike Acquisition Associates LLC is an affiliate of Pepper Pike and that Pepper Pike's CEO, Paul Kiebler, is also the Manager of Pepper Pike Acquisition Associates LLC. (Doc. Nos. 53-4 at 2-3; Doc. No. 53-5 at 2.) Defendants have not submitted a response to Brady's supplemental brief contesting any of the evidence presented. As such, the Court finds that Defendants have acted in willful bad faith based on their failure to comply with the Court's orders regarding discovery and their repeated misrepresentations to both the Court and Brady to avoid the production of relevant information. The first factor therefore weighs in favor of the entry of default judgment.

Next, with respect to the second factor, the Court finds that Brady has been prejudiced by Defendants' actions. "The second factor is satisfied if the failure to provide discovery deprives the opposing party of information critical to their case and they are forced to expend significant time and resources addressing the discovery abuses." *DiLuzio*, 2016 WL 7406535, at *30; *see also Laukus*, 292 F.R.D. at 511 ("Courts have found prejudice where concealment of relevant documents has impeded a party's ability to fully discover an issue.").

9

In this case, although the Court's prior sanctions order remedied much of the prejudice resulting from Defendants' conduct, Defendants' continued discovery delays subsequent to that order and false representations regarding their ownership of real estate and affiliation with Pepper Pike Acquisition Associates LLC have clearly resulted in additional prejudice. Brady has been forced to expend additional time and expense to uncover Defendants' new discovery abuses and still does not have all of Defendants' financial information necessary to support her claim for punitive damages. Thus, the second factor also supports the entry of default judgment against Defendants.

However, the third factor weighs against the grant of default judgment. "Generally, the absence of prior warnings that dismissal could result from a party's continued misconduct weighs against dismissal." *Laukus*, 292 F.R.D. at 512. A "prior warning is not indispensable." *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010); *see also United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) ("[N]o one factor is dispositive."); *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2015 WL 4742686, at *8 (S.D. Ohio Aug. 11, 2015) ("Where a court finds that a party acted in bad faith, notice is not required."). However, the Sixth Circuit has "reversed the dismissal of certain cases where the district court failed to 'put the derelict parties on notice that further noncompliance would result in dismissal.'" *Fharmacy Records*, 379 F. App'x at 524 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 644 (6th Cir. 2005)).

Brady asserts this factor supports her request because the Court has previously warned Defendants that their behavior could result in sanctions, including a specific warning at the sanctions hearing that this might become a "what are the damages case." (Doc. No. 46 at 7.) However, the Court agrees with Defendants that the Court's warning at the sanctions hearing was issued in the context of discussing the preclusion of a potential theory of defense to Brady's claims and did not

10

constitute a clear warning that Defendants' conduct could result in a default judgment. Thus, this factor weighs against the entry of default judgment.

Finally, "[t]he fourth factor 'is whether less drastic sanctions were first imposed or considered' before the harsh sanction of dismissal or default [was] imposed." *Peltz v. Moretti*, 292 F. App'x 475, 480 (6th Cir. 2008) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). The Sixth Circuit "has stated that 'the sanction of dismissal is appropriate only if . . . *no alternative sanction* would protect the integrity of the pretrial process.'" *Id.* (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 594 (6th Cir. 2001)).

While the Court has previously imposed less drastic sanctions by precluding Defendants' defense regarding the outsourcing of Brady's job and imposing financial sanctions, the Court finds that default judgment is still not appropriate at this time. Defendants' conduct has not yet risen to such a level that the Court has no choice but to impose default to protect the integrity of the pretrial process. The cases relied on by Brady in support of her Motion for Default Judgment generally involved more egregious behavior on the part of the sanctioned party. *See e.g.*, *Laukus*, 292 F.R.D. at 489, 513-14 (dismissing plaintiff's action four years after the close of discovery because "[a]ny lesser sanction would fail to take into account the fact that the misconduct of plaintiff and his counsel has so completely tainted the proceedings that the parties and the Court would have to start this case over from the beginning"). Consequently, this factor also weighs against entering default judgment.

Considering all of the factors addressed above, although some weigh in favor of imposing default judgment against Defendants, the Court concludes that default judgment is not appropriate, especially given that the Court has not previously issued a clear warning that Defendants' conduct may result in such a severe sanction. However, the Court will take the opportunity to issue that

warning now. If Defendants and their counsel continue to engage in the same pattern of false statements, misrepresentations, and dilatory conduct with respect to discovery exhibited throughout these proceedings, the Court will render default judgment against Defendants and the case will be tried on damages alone. *See Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 373 (6th Cir. 2008) (affirming issuance of default judgment based on the defendant's "'willful, prejudicial, and repeated obstruction' of discovery and . . . 'repeated disregard of the Court's orders'").

### III. Conclusion

For the reasons set forth above, Brady's Motion for Default Judgment (Doc. No. 46) is DENIED.

**IT IS SO ORDERED.**

Date: October 28, 2020

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE