IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHELLE BRADY,** | **CASE NO. 1:19-CV-01303** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **APM MANAGEMENT, LLC, et al.,** | |
| Defendants. | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Renewed Motion for Default Judgment of Plaintiff Michelle Brady ("Brady"). (Doc. No. 57.) Defendants APM Management, LLC ("APM") and Pepper Pike Capital Partners, LLC ("Pepper Pike") (collectively, "Defendants") filed a brief in opposition on December 9, 2020, to which Brady replied on December 16, 2020. (Doc. Nos. 61, 63.)[1] The Court held a hearing on Brady's Renewed Motion for Default Judgment on February 5, 2021, after which the Court took Brady's Motion under advisement. (Doc. No. 70.) For the following reasons, Brady's Renewed Motion for Default Judgment (Doc. No. 57) is DENIED. However, the Court concludes that an alternative sanction is appropriate, as set forth below.

**I.  Background**

This case arises from APM's termination of Brady from her position as a regional property manager shortly before she was scheduled to return to work from a medical leave. (Doc. No. 44 at ¶¶ 16-23.) Pepper Pike is the successor to APM. (*Id.* at ¶ 9.) Brady alleges that her termination

---

[1] On December 31, 2020, Brady also filed a supplement to her reply in support of her Renewed Motion for Default Judgment in order to provide citations to deposition transcripts that were not available at the time of filing. (*See* Doc. Nos. 66, 66-2.)

violated the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and Ohio law prohibiting disability discrimination. (*Id.* at ¶¶ 32-83.)

On June 26, 2020, the Court held a hearing on several motions filed by Brady in which she sought sanctions for Defendants' conduct during discovery and certain misrepresentations, including false statements related to the reason for Brady's termination. (*See* Doc. No. 43.) During the hearing, the Court concluded that sanctions should be assessed against Defendants and their counsel based on their consistent failure to comply with discovery obligations without Court intervention and repeated false representations that Brady was terminated because her position was outsourced. As a result, the Court (1) assessed sanctions against Defendants and their counsel for the excess costs and reasonable expenses, including attorneys' fees, that Brady was forced to incur as a result of their conduct; and (2) barred Defendants' defense regarding the outsourcing of Brady's job. (*Id.*) The Court also granted Brady leave to file an amended complaint to include a cause of action for spoliation under Ohio law based on Brady's allegations that Defendants failed to properly preserve evidence of job postings and applications for management level positions from the time period in which Brady was terminated. (*Id.*)

During the June 26, 2020 hearing, the Court also issued several discovery related orders. As relevant here, the Court denied Defendants' Motion for Reconsideration, which sought reconsideration of the Court's previous order granting Brady's Motion to Compel the production of certain financial information in response to Brady's Requests for Production of Documents ("RFPs") 9 through 13. (*See* Doc. Nos. 36, 41, 43.) These requests sought the production of information related to Defendants' financial condition as relevant to Brady's claim for punitive damages. (*See* Doc. No. 36; Doc. No. 36-1 at 9-11.) RFP 12 specifically sought documentation reflecting any real estate held

2

by Defendants, but Defendants indicated in their Motion for Reconsideration that they do not hold any real estate. (*See* Doc. No. 36-1 at 10; Doc. No. 41 at 2 n.1.) Defendants' counsel reiterated this position at the hearing as well.

On July 15, 2020, Brady filed a Motion for Default Judgment, asserting that Defendants had made new false representations and further failed to comply with their discovery obligations after the sanctions hearing warranting the entry of default judgment against them. (Doc. No. 46.) One of the bases for Brady's Motion for Default Judgment was that Defendants had failed to comply with the Court's order to produce documents in response to RFPs 9 through 13 regarding Defendants' financial information. (*Id.* at 2-4.) Brady also pointed out that earlier in the case, Pepper Pike's Director of Revenue, Stephanie Sturzinger ("Sturzinger"), had submitted an affidavit indicating Defendants "acquired" and "sold" certain properties that they managed, which conflicted with Defendants' position that they do not hold any real estate. (*Id.* at 3-4; Doc. No. 32-1 at ¶ 10.) Defendants opposed Brady's request for default judgment, arguing that they had complied with all discovery requests. (Doc. No. 51 at 2.) They also submitted a new declaration from Sturzinger stating that the referenced properties were not bought and sold by Defendants or their related entities, but rather by unrelated third parties with whom Defendants contracted to manage the properties. (*Id.* at 3-4; Doc. No. 51-3 at ¶ 4.)

After filing a reply in support of her Motion for Default Judgment, Brady also filed a supplemental brief detailing newly discovered evidence indicating that (1) Defendants do, in fact, own real estate; and (2) Defendants are affiliated with an entity owned by Defendants' CEO, Paul Kiebler ("Kiebler")—Pepper Pike Acquisition Associates, LLC ("PPAA")—for which Defendants had refused to produce financial information on the basis that PPAA was not an affiliate or in any

3

way related to Defendants. (Doc. No. 53.) Defendants did not file a response to Brady's supplemental brief contesting or explaining any of the evidence submitted by Brady.

On October 28, 2020, the Court denied Brady's Motion for Default Judgment. (Doc. No. 55.) Based on the uncontested evidence from Brady's supplemental brief, the Court found that Defendants had failed to fully comply with its order to produce the requested financial information regarding PPAA and Defendants' ownership of real estate, and, as a result, Brady still did not have all of Defendants' financial information necessary to support her claim for punitive damages. (*Id.* at 8-10.) Nonetheless, the Court concluded that default judgment was not appropriate because it had not previously warned Defendants that their failure to cooperate could result in default judgment and Defendants' conduct was not so egregious as to support such a harsh sanction. (*Id.* at 10-12.) The Court did explicitly warn Defendants, however, that continued misconduct could result in default judgment against them. (*Id.* at 12.)

A week after the Court's decision, Brady filed the Renewed Motion for Default Judgment that is currently under consideration. (Doc. No. 57.) Therein, Brady asserts that default judgment is now appropriate because Defendants have continued to refuse to produce any documents relating to their ownership of real estate or any financial information related to PPAA. (*Id.*) In opposition, Defendants contend that default judgment is not warranted because they have met their obligation to produce the requested financial information regarding Defendants and their related entities. (Doc. No. 61.) In support of this contention, Defendants rely on Kiebler's deposition testimony, in which he denies that Defendants or their related entities own any property and states that PPAA is Kiebler's personal business that holds assets unrelated to Defendants. (*Id.*)

In response, Brady asserts that Defendants waived their arguments in this regard by failing to raise them earlier.  (Doc. No. 63 at 3.)  Brady also submits substantial, albeit largely circumstantial, evidence disputing Kiebler's testimony with respect to each issue, some of which had previously been presented in connection with Brady's first Motion for Default Judgment.  (*Id.* at 3-9.)  Specifically, with respect to Brady's assertion that Defendants own property, she submits the following support: (1) when Sturzinger submitted a new declaration to explain that her previous affidavit stating that Defendants "acquired" and "sold" property was not accurate, she did not correct another statement from her previous affidavit indicating that Defendants "invest[] in" property (*see* Doc. No. 32-1 at ¶ 3; Doc. No. 51-3); (2) during her deposition, Sturzinger repeatedly stated that Defendants "buy and sell" real estate (Doc. No. 66-3 at 18:9-20, 97:2-9, 127:4-8); (3) Defendants' website states that they invest in multifamily real estate (Doc. No. 63-1 at 1 ("Pepper Pike Capital Partners is a vertically integrated multifamily investment, management and (re)development company headquartered in Cleveland, Ohio.  With a portfolio of approximately 5,000 units across the Midwest . . .")); (4) Defendants' postings for job vacancies state that they own, redevelop, and invest in property (Doc. No. 63-2 at 33, 38, 40; Doc. No. 39-4; Doc. No. 39-6 at 28); (5) Defendants' former President, Kristie Arnst, has alleged in a lawsuit against Defendants that they own property and was quoted in a news article discussing Defendants' purchase of an apartment complex (Doc. No. 53-7 at 2); (6) the Wayne County, Michigan Register of Deeds website shows various liens involving Defendants or their affiliates in 2018 and 2019 (Doc. No. 53-2); and (7) an investment prospectus identifies affiliates of Pepper Pike as part owners of an apartment building (Doc. No. 53-4 at 16).

With respect to Brady's assertion that PPAA is an affiliate of Defendants, Brady submits the following support: (1) PPAA has the same business address as Defendants (*see* Doc. No. 53-5); (2)

Defendants' intracompany balance sheet lists PPAA alongside other subsidiaries (Doc. No. 64-1 at 9, 15; Doc. No. 64-2 at 6, 11); (3) a public investment prospectus describes PPAA as an "affiliate" of Defendants (Doc. No. 53-4 at 3-4); (4) the Wayne County, Michigan Register of Deeds website shows PPAA granting some sort of lien to subsidiary Pepper Pike Construction LLC in August 2019 (Doc. No. 53-2); and (5) Defendants' tax returns and balance sheets over the past three years show several separate large amounts owed or paid to PPAA (Doc. No. 61-2 at 20:10-27:12).[2] In light of this evidence, Brady contends that Kiebler's conclusory assertions regarding Defendants' lack of ownership of property and PPAA's status as an unrelated entity, unsupported by any documentation, are insufficient for the Court to reconsider these issues when they were already established with respect to Brady's first Motion for Default Judgment. (Doc. No. 63 at 3-4, 9.)

In her reply, Brady also identifies several other more recent acts by Defendants that she contends support her request for default judgment. Specifically, Brady argues that Kiebler's deposition testimony was hostile, evasive, and disingenuous, that Defendants postponed two depositions shortly before they were scheduled to occur because Defendants' counsel failed to notify the witnesses that they were going to be deposed, and that deposition testimony from Defendants' Director of Human Resources, Christa Lenko ("Lenko"), revealed an inaccuracy in an earlier affidavit submitted by her regarding the way in which Defendants stored postings for job vacancies. (Doc. No. 63 at 9-13.)

On February 5, 2021, the Court held a hearing on Brady's Renewed Motion for Default Judgment during which the Court heard oral argument. (Doc. No. 70.) Although given the

---

[2] Defendants speculate these may have been loans, but the various amounts owing to PPAA generally are not listed as loans on Defendants' tax returns. (*See* Doc. No. 61-2 at 20:10-27:12; Doc. No. 67-1 at 78:1-80:25, 85:5-16, 86:2-88:23, 96:1-97:23, 100:3-24.)

6

opportunity, neither party presented any witnesses to testify. At the conclusion of the hearing, the Court took Brady's Motion under advisement. (*Id.*)

## II. Analysis

Pursuant to Fed. R. Civ. P. 37, "[a] district court may sanction parties with entry of default judgment for failure to comply with discovery orders." *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 933 (6th Cir. 2020); Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . . (vi) rendering a default judgment against the disobedient party."). Courts also "have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice." *Smith v. Comm'r*, 926 F.2d 1470, 1475 (6th Cir. 1991).

"However, entry of a default judgment against a party 'for failure to cooperate in discovery is a sanction of last resort,' and may not be imposed unless noncompliance was due to 'willfulness, bad faith, or fault.'" *Flagg v. City of Detroit*, No. 05–74253, 2011 WL 4634249, at *10 (E.D. Mich. Aug. 3, 2011) (quoting *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)). When analyzing whether the entry of default judgment is an appropriate sanction, courts consider four factors:

    1) whether the disobedient party acted in willful bad faith;

    2) whether the opposing party suffered prejudice;

    3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and

    4) whether less drastic sanctions were imposed or considered.

*KCI*, 801 F. App'x at 934.

After reviewing these factors, the Court once again concludes that default judgment is not appropriate, although the Court will impose a less drastic sanction on Defendants.

With respect to the first factor, "[i]f a party refuses to comply with discovery repeatedly, such conduct is indicative of 'willfulness, bad faith, or fault.'" *DiLuzio v. Vill. of Yorkville, Ohio*, No. 2:11-cv-1102, 2016 WL 7406535, at *26 (S.D. Ohio Dec. 22, 2016) (quoting *Bank One*, 916 F.2d at 1079). "[T]he burden of showing that a failure to comply with court orders and discovery requests was due to inability, not willfulness or bad faith, rests with the individual against whom sanctions are sought." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 509 (N.D. Ohio 2013).

The Court previously held that Defendants' failure to fully comply with the Court's order to produce the requested financial information regarding PPAA and Defendants' ownership of real estate supported a finding that they had acted in willful bad faith. (Doc. No. 55 at 8-9.) Defendants still have not produced this information. And while Defendants now for the first time rely on Kiebler's deposition testimony to support their contention that they have fully complied with the requested discovery because they do not own any property and because PPAA is an unrelated entity, Defendants still have not submitted any supporting documentation to that effect or addressed the evidence submitted by Brady that contradicts Kiebler's testimony. Based on the substantial evidence from a variety of different sources presented by Brady, the Court concludes that Defendants have continued to act in bad faith by failing to fully comply with Brady's discovery requests.

The second factor, whether a party has suffered prejudice, "is satisfied if the failure to provide discovery deprives the opposing party of information critical to their case and they are forced to expend significant time and resources addressing the discovery abuses." *DiLuzio*, 2016 WL 7406535,

at *30; see also *Laukus*, 292 F.R.D. at 511 ("Courts have found prejudice where concealment of relevant documents has impeded a party's ability to fully discover an issue."). "[I]t is in cases . . . where the obstruction prevented the other party from accessing evidence needed to bring the case, that default is most likely to be the appropriate sanction." *KCI*, 801 F. App'x at 935 (quoting *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008)). On the other hand, when the obstructed discovery is not as critical or relates to a collateral issue, the resulting prejudice weighs less heavily in favor of default judgment. For example, one court held that lesser sanctions were appropriate when the defendants withheld "information that would assist the jury in calculating punitive damages," as "this information would not necessarily affect the outcome of the case from a liability perspective." *Lopez v. Pama Mgmt., Inc.*, No. 2:16–CV–9390–ODW–JCx, 2017 WL 4685009, at *3 (C.D. Cal. Oct. 17, 2017); see also *Flagg*, 2011 WL 4634249, at *14 (holding the deletion of certain emails did "not compel the extreme sanction of a default judgment" because the emails were not "the lynchpin of the Plaintiffs' case").

In this case, the Court previously concluded that Brady suffered prejudice because she had been forced to expend additional time and expense to uncover Defendants' discovery abuses and still did not have all of Defendants' financial information necessary to support her claim for punitive damages. (Doc. No. 55 at 10.) Those same issues remain and again support a finding of prejudice. However, the financial information withheld by Defendants relates to their net worth, which is relevant to the assessment of punitive damages—not liability.[3] As such, the prejudice suffered by

---

[3] In her briefing in support of her Motion to Compel, first Motion for Default Judgment, and Renewed Motion for Default Judgment, Brady asserted that she was entitled to the requested financial information because it was relevant to her claim for punitive damages. (Doc. No. 36; Doc. No. 53 at 6 n.3; Doc. No. 63 at 2, 6.) Accordingly, the Court has never ruled that Brady was entitled to the requested information based on its relevance to an issue of liability. At the February 5, 2021 hearing on Brady's Renewed Motion for Default Judgment, Brady's counsel for the first time raised the argument

9

Brady in this regard does not compel the imposition of default judgment. Similarly, any prejudice resulting from the additional acts identified by Brady in her reply in support of her Renewed Motion for Default Judgment, such as Kiebler's evasive answers at his deposition and the rescheduling of multiple depositions, does not rise to such a level as to strongly favor the entry of default judgment. Indeed, even with respect to the inaccurate statement in Lenko's affidavit, Brady has not identified any additional prejudice or claimed that Lenko did not conduct a proper search of prior job postings.

Next, the third factor considered by courts is "whether the court warned the disobedient party that failure to cooperate could result in a default judgment." *KCI*, 801 F. App'x at 934. This factor is clearly satisfied in this case given the Court's explicit warning to Defendants in its ruling on Brady's first Motion for Default Judgment that continued false statements, misrepresentations, and dilatory conduct with respect to discovery could result in default judgment. (Doc. No. 55 at 12.)

Finally, "[t]he fourth factor 'is whether less drastic sanctions were first imposed or considered' before the harsh sanction of dismissal or default [was] imposed." *Peltz v. Moretti*, 292 F. App'x 475, 480 (6th Cir. 2008) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). The Sixth Circuit "has stated that 'the sanction of dismissal is appropriate only if . . . *no alternative sanction* would protect the integrity of the pretrial process.'" *Id.* (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 594 (6th Cir. 2001)).

---

that Defendants' financial information is relevant to liability because Kiebler testified that part of the reason for Brady's termination was that Defendants had to restructure and shift the management of certain properties to third parties because of Defendants' poor financial condition. However, Kiebler's deposition was taken prior to Brady's reply in support of her Renewed Motion for Default Judgment—indeed, Brady cites to it numerous times—yet Brady did not raise this argument then. Thus, Brady has not properly supported this argument or shown that any resulting prejudice necessitates default judgment. In addition, it appears Brady will have ample opportunity to rebut Defendants' contentions with respect to the reason for her termination without the additional financial documents requested.

10

In the instant matter, although lesser sanctions have already been imposed, the entry of default judgment on the issue of liability still would be excessive, as Defendants' obstruction of discovery generally relates not to issues of liability, but to the calculation of punitive damages. Thus, this factor weighs against the entry of default judgment, and, in consideration of all the factors discussed above, the Court concludes that lesser sanctions, as set forth below, are more appropriate.

While "Federal Rule of Civil Procedure 37(b)(2)(A) permits a district court to 'render[ ] a default judgment' against a party who disobeys a discovery order," district courts also have "'broad discretion' to permit the jury to make an adverse inference." *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013) (quoting *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc)). Where, as here, defendants have failed to produce evidence relating to their net worth, courts have held that an adverse inference may be appropriate in the punitive damages context. *See Cummings Inc. v. BP Products N. Am., Inc.*, Nos. 3:06–0890, 3:07–0834, 2009 WL 3169463, at *5 (M.D. Tenn. Sept. 30, 2009) ("[I]n the punitive damages stage of a trial, a court may draw inferences, adverse to the defendant, about the defendant's net worth, if the defendant fails to put forth specific evidence of net worth, and the plaintiff has come forth with some such evidence."). For instance, in *Motorola Credit Corp. v. Uzan*, the Second Circuit affirmed the district court's $1 billion punitive damages award after the district court determined that the defendants' refusal to produce discovery related to their net worth warranted an adverse inference against them, and, based on a *Forbes* estimate and other sources, estimated the defendants' net worth to be at least $5 billion. 509 F.3d 74, 80-85 (2d Cir. 2007). In addition, in *Lopez*, the court warned the defendants that it was inclined to issue an adverse inference instruction if they continued to disregard the court's order to produce information related

11

to defendants' financial well-being relevant to the plaintiff's punitive damages claim. 2017 WL 4685009, at *4.

Here, Defendants have had numerous opportunities to produce the information related to their financial condition and net worth that was requested by Brady or to more fully demonstrate that they have indeed complied with Brady's requests and the Court's order. Having failed to do so, the Court concludes that if this case reaches a punitive damages stage, an adverse inference with respect to Defendants' net worth for the purposes of assessing punitive damages is appropriate, the exact language of which will be decided at that time.[4] Accordingly, if this case proceeds to trial, Brady is directed to submit the proposed wording of such an inference and any additional support for her proposed wording for the Court's review prior to any punitive damages phase of the proceedings.

### III.   Conclusion

For the reasons set forth above, Brady's Renewed Motion for Default Judgment (Doc. No. 57) is DENIED. However, the Court concludes that an alternative sanction in the form of an adverse inference with respect to Defendants' net worth for the purposes of assessing punitive damages is appropriate.

**IT IS SO ORDERED.**

Date: April 9, 2021

  s/Pamela A. Barker  
PAMELA A. BARKER  
U. S. DISTRICT JUDGE

---

[4] The Court notes that in response to the Court's questioning during the hearing on Brady's Renewed Motion for Default Judgment, counsel for both parties stated that an adverse inference may be an appropriate sanction if default judgment was not granted.